| | | |
|---|---|---|
| **TACOMA BORDEN, et. al.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:19-CV-00551** |
| | § | |
| **FORT BEND COUNTY, TEXAS, et. al.** | § | **JURY DEMAND** |
| *Defendants.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Tacoma Borden and Attalia Borden (hereinafter "Plaintiffs") and file this petition complaining of Fort Bend County, Texas, and individually, Fort Bend County employees and policymakers, Sheriff Troy E. Nehls, Lieutenant Jeff Kovar, Sergeant Conger, Sergeant Youngblood, Sergeant Ganey, Deputy T. James, Deputy Graham, Deputy T. Garriques, Deputy Pedone, Deputy F. Bain, Deputy D. Edwards, Deputy K. Guidry-August, Deputy Holman, Garza, Kloeber, Narinsingh, Rains, Rabius and John and Jane Does (hereinafter referred to as "Defendants"), and in support, respectfully show the following:

## I.
## PRELIMINARY STATEMENT

1. Tacoma Borden was an inmate in the Fort Bend County Jail (hereinafter sometimes referred to as "County Jail" or simply "Jail"). Mrs. Borden received sub-standard medical care and she was delayed and/or denied her legal prescriptions and necessary medical medications for several days while in custody of the Fort Bend County Jail. The Jail and its medical staff failed to properly care for Mrs. Borden's known and obvious serious medical needs–and demonstrated a deliberate indifference to the same–causing her harm.

2. Further, as a result of Defendants' deliberate indifference to her needs, Ms. Borden languished in pain–and blood-and-urine soiled clothing for several days without adequate care;

1

she was forced to appear publicly in court, in rank, blood-and-urine-ridden clothing (which was extremely embarrassing and humiliating); and ultimately subjected to an undue extension of her incarceration caused by the actions and/or omissions of Fort Bend County and its employees.

3. Unfortunately, Mrs. Borden's experience in Defendants' custody is not unique, but rather the predictable result of the Fort Bend County's customs, policies, and practices that dictate the manner in which it cares for its inmates. Among other things, Fort Bend County has maintained various policies and practices that prioritize maximizing their profits by inadequately staffing the jail with personnel ill-equipped to identify and handle serious medical emergencies, and employees without the requisite authority to transfer detainees experiencing–or in risk of–serious medical emergencies to the proper treatment facility. These policies and customs create grossly unsafe, unsanitary, and inhumane conditions of confinement for the individuals that they detain.

4. The administrative function of Fort Bend County's Detention Division is supervised by a lieutenant–in this case, Lt. Jeff Kovar. Lt. Jeff Kovar, Sheriff Troy Nehls and their designated sergeants are responsible for overseeing Administrative Functions three main groups, (1) budget and information systems, (2) support and commissary, and (3) medical and maintenance. In an unbelievable fashion, Mrs. Borden suffered harm resulting from material failures from each of these groups. Which demonstrates that her injuries were not caused by simple employee negligence or oversight, but rather systemic and institutional failures (only possible in light of deliberate indifference) on behalf of Defendant County and its policymakers.

5. Pursuant to Fort Bend County's policies and practices, and consistent with Borden's experience with Defendants, the inmates with serious medical conditions in the Fort Bend County Jail are denied their prescribed medication–or experience significant delay–when requesting necessary medical care. As demonstrated by Borden's experience, the Fort Bend County's policy is to refrain from transporting inmates to the hospital despite their serious medical conditions,

2

keeping epilepsy medication stocked or making it readily available to incoming inmates with preexisting conditions. Further demonstrated by Borden's experience, Fort Bend County Jail's policy has fostered a culture of indifference to the inmates' serious medical needs among its employees and contractors.

6. Unsurprisingly, because Fort Bend County conducts its business in the manner it does, numerous people have been significantly injured, or in some cases have died, because they did not receive basic medical care or were subjected unsafe conditions while in the Defendants' custody.

7. While the culture of indifference to inmates' humanity and constitutional rights that permeates throughout the Fort Bend County Jail creates a significant risk of injury for any person in their custody, a stay in Fort Bend County Jail can be life-threatening for persons with medical conditions because the Fort Bend County Jail does not provide for the most basic medical needs of the individuals in their custody, as Mrs. Borden's experience demonstrates. Fort Bend County does not provide training to their employees concerning the treatment of individuals with preexisting medical conditions, routinely refuse to provide necessary prescription medications to the individuals who need them, and have even instructed or permits their personnel to ignore individuals' requests for medical assistance. It is thus no surprise that numerous people detained in the Fort Bend County Jail have been severely injured, because the Defendants refused to provide them with routine medical care they clearly needed or constitutionally-adequate conditions of confinement.

8. Further, Fort Bend County's policies (or disregard thereof), or its failure to train and supervise, caused Mrs. Borden to serve her time for her traffic citations consecutively instead of concurrently–adding two days to her incarceration–resulting in her spending Mother's Day in jail.

9. As a result of Defendants' unlawful detention, denial and delay of adequate medical care and inhumane and unsanitary policies, practices and conditions, Mrs. Borden has suffered

3

significant physical and emotional pain and injury, including a stroke, with residual deficits, altered mental status and other life-altering consequences–necessitating long-term physical and psychological care. She and her husband bring this action as a result.

**II.**
**PARTIES**

10. **Plaintiff, Tacoma Borden and Attalia Borden**, bring this suit individually. This lawsuit is brought by Tacoma Borden (formerly Tacoma Thompson) and her husband Attalia Borden. They bring this action in their individual capacities. Plaintiff, Tacoma Borden, brings this civil rights, personal injury, medical negligence, medical malpractice, disability action as the injured party. Plaintiff, Attalia Borden, brings this action as the husband of Tacoma Borden, and, as an individual.

11. **Defendant, Deputy F. Bain**, is, and was at all times relevant an employee of Fort Bend County, at the Fort Bend County Jail, and is sued in his individual capacity. Defendant Bain is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

12. **Defendant, T. James**, is, and was at all times relevant an employee of Fort Bend County, at the Fort Bend County Jail, and is sued in his individual capacity. Defendant James is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He was personally involved in the harassment and retaliation against Plaintiffs.

13. **Defendant, D. Edwards**, is, and was at all times relevant an employee of Fort Bend County, at the Fort Bend County Jail, and is sued in her individual capacity. Defendant Edwards is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

4

14. **Defendant, K. Guidry-August**, is, and was at all times relevant an employee of Fort Bend County, at the Fort Bend County Jail, and is sued in her individual capacity. Defendant Guidry-August is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

15. **Defendant, Pedone**, is, and was at all times relevant an employee of Fort Bend County, at the Fort Bend County Jail, and is sued in her individual capacity. Defendant Pedone is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

16. **Defendant, Holman**, is, and was at all times relevant an employee of Fort Bend County, at the Fort Bend County Jail, and is sued in his individual capacity. Defendant Holman is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

17. **Defendant, Graham**, is, and was at all times relevant an employee of Fort Bend County, at the Fort Bend County Jail, and is sued in his individual capacity. Defendant Graham is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

18. **Defendant, Kloeber, NP**, is, and was at all times relevant an employee of Fort Bend County, at the Fort Bend County Jail, and is sued in his individual capacity. Defendant Kloeber is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial

and delay of the medical care and treatment of Tacoma Thompson-Borden.

19. **Defendant, Rabius, RN**, is and was at all times relevant to this action, a duly appointed Jail Nurse providing medical services at the Fort Bend County Jail, is sued in his individual capacity. She is employed by Fort Bend County. Defendant Rabius is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

20. **Defendant, Rains, RN**, is and was at all times relevant to this action, a duly appointed Jail Nurse providing medical services at the Fort Bend County Jail, is sued in his individual capacity. She is employed by Fort Bend County. Defendant Rains is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

21. **Defendant, Narinsingh, RN**, is and was at all times relevant to this action, a duly appointed Jail Nurse providing medical services at the Fort Bend County Jail, is sued in his individual capacity. She is employed by Fort Bend County. Defendant Narinsingh is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

22. **Defendant, Luckstead, RN**, is and was at all times relevant to this action, a duly appointed Jail Nurse providing medical services at the Fort Bend County Jail, is sued in his individual capacity. Defendant Luckstead is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma

Thompson-Borden.

23.     **Defendant, Garza**, is and was at all times relevant to this action, a duly appointed to provide medical services at the Fort Bend County Jail, is sued in her individual capacity. Defendant Garza is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Thompson-Borden.

24.     **Defendant, Youngblood**, is, and was at all times relevant an employee (a supervisor) of Fort Bend County, working at the Fort Bend County Jail, and is sued in his individual capacity. Defendant Youngblood is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Borden, if not as a principal actor, as a policymaker.

25.     **Defendant, Ganey**, is, and was at all times relevant an employee (a supervisor) of Fort Bend County, working at the Fort Bend County Jail, and is sued in her individual capacity. Defendant Ganey is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Borden, if not as a principal actor, as a policymaker.

26.     **Defendant, Conger**, is, and was at all times relevant an employee (a supervisor) of Fort Bend County, working at the Fort Bend County Jail, and is sued in her individual capacity. Defendant Conger is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Borden, if not as a principal actor, as a policymaker.

27. **Defendant, Jeff Kovar**, is, and was at all times relevant an employee of Fort Bend County, as supervisor at the Fort Bend County Jail, and is sued in his individual capacity. Defendant Kovar is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Borden, if not as a principal actor, as a policymaker.

28. **Defendant, Sheriff Troy E. Nehls**, at all times relevant was the duly elected Sheriff of Fort Bend County, and policymaker at the Fort Bend County Jail, is sued in his individual capacity. Defendant Troy Nehls is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. At all times material to the claims set forth herein, Sheriff Troy E. Nehls (hereinafter "Sheriff Nehls") was the top elected official of the Fort Bend County and its top policymaker for the Fort Bend County Jail, along with members of the Commissioner's Court. Sheriff Nehls approved the policies, practices and customs at issue in this Complaint. Sheriff Nehls was personally involved in the inhumane and unsanitary conditions of confinement and denial and delay of the medical care and treatment of Tacoma Borden, if not as a principal actor, as a policymaker.

29. **Defendants, Fort Bend County John and Jane Does,** are employed by Fort Bend County Sheriff's Office. John and Jane Does are sued in their "personal or individual capacity, and at all relevant times were acting under color of law." John Does are delegated policy-makers with respect to policies and procedures at the Fort Bend County Jail at issue in this Complaint.

30. Each individual defendant may be served at their place of employment located at 1410 Williams Way Blvd., Richmond, Texas 77469.

31. **Defendant, Fort Bend County, Texas** ("Fort Bend" or simply "County"), is a Governmental Entity and political subdivision of the State of Texas and is a "person" under 42

U.S.C. § 1983 and, at all times relevant to this action acted under color of law.  Fort Bend County, Texas, may be served through its registered Agent County Judge KP George located at 401 Jackson Street, Richmond, Texas 77469.

32. One or more of the individual Defendants had supervisory responsibilities with respect to individual Defendants, and with respect to operations of the Fort Bend County's Detention Center.

33. At all times material to the claims set forth herein, Sheriff Nehls was the director of the Fort Bend County Sheriff's Office  and was responsible for the oversight of the Fort Bend County Sheriff's Office, the development, promulgation, and implementation of policies, procedures and standards for the Fort Bend County's Jail.  Specifically, Sheriff Nehls is the chief policymaker for the Jail and was directly responsible for its operations and all of its officers, including those named herein. Sheriff Nehls also approved the policies regarding the Jail's Internal Affairs investigations of employee misconduct.

34. Fort Bend County funds and operates the Fort Bend County Jail, which, along with the County Commissioner's Office, is responsible for the implementation of the Jail's budget, policies, procedures, practices and customs, as well as the acts and omissions, challenged by this suit.  The Fort Bend County Sheriff's Office is also responsible for preventative, investigative, and medical services for all inmates within the Fort Bend County Jail.

35. At all times material to these complaints and allegations of fact, all party defendants named in this lawsuit acted in bad faith, and with malice, reckless or callous disregard for the Constitutional and statutory rights of Plaintiffs.

### III.
### JURISDICTION, VENUE, AND BASIS FOR RELIEF

36. This Complaint presents federal questions pursuant to 28 U.S.C §§ 1331 and 1343 as well as the United States Constitution, including the Fifth and Fourteenth Amendments to the United States Constitution, which are enforced pursuant to 42 U.S.C. § 1983. This Complaint is further

being brought to redress Plaintiffs' claims of deprivation of rights, privileges, and immunities by state actors performing in their official and/or individual capacities under color of state law and employment, when such rights, privileges, and immunities are secured under the United States and Texas Constitutions and federal laws, including the Americans with Disabilities Act/Rehabilitation Act.

37. While entry of a declaratory judgment will establish Tacoma Borden's federally protected Constitutional and statutory rights have been violated, relief provided by § 1983 enables Plaintiff to establish the violation of a liberty interest, due process, or equal protection right, and that certain defendants with an opportunity to take corrective or preventive measures failed to do so. Subject to and dependent upon a ruling in Plaintiffs' favor as to his due process or equal protection claims, the principle of pendent jurisdiction permits Plaintiff to bring a state law tort claim of "Intentional Infliction of Emotional Distress" against individual defendants.

38. All conditions precedent to bring these causes of action have occurred and/or been performed.

39. The subject matter and damages claimed in controversy is within the jurisdictional limit of the court.

40. Venue is proper in the Houston Division of the Southern District of Texas since Plaintiff's claims, including federal claims asserted herein, accrued in Fort Bend County, Texas and one or more of the defendants reside in Fort Bend County, Texas or is principally located in Fort Bend County, Texas.

41. In accordance with federal jurisprudence, the laws of the State of Texas, the jurisdiction of this court is invoked to secure protection of and to redress the deprivation of rights secured to Plaintiff Tacoma Borden by the U.S. Constitution under its Fifth and Fourteenth Amendments. For violations of her federally-protected constitutional rights, Plaintiff is entitled to the requested relief

10

against all Defendants because at all times relevant to this action, their conduct was subject to 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

**V.**
**FACTUAL BACKGROUND**

**I. Defendants Subjected Tacoma Thompson-Borden to Unconstitutional and Inhumane Conditions of Confinement and Were Deliberately Indifferent to Her Significant Medical Needs**

**Tacoma Borden's Experience In The Fort Bend County Jail**

42.	Tacoma Borden (hereinafter referred to as "Mrs. Borden") has been married to Attalia Borden (hereinafter referred to as "Mr. Borden") for two years. They have one young child. Mr. and Mrs. Borden reside in Fort Bend County, Texas. Tacoma Borden is a 32-year-old African American female, a mother and wife.

43.	Mrs. Borden has epilepsy and suffers from severe seizures. To manage her condition, she must take daily prescription medications. Failure to take her prescribed medications can lead to a significant risk of stroke, heart attack, paralysis, or death.

44.	Accordingly, after being diagnosed, Mrs. Borden consistently took her required medications and was thus able to manage her condition without significant harm or hospitalization. That changed in May 2018 when Defendants subjected Mrs. Borden to inhumane and unsanitary conditions of confinement, ignored her requests for medical treatment, and refused to provide her access to her prescription medications during her 9-day stay in the Fort Bend County Jail.

45.	On Sunday, April 29, 2018, Defendants took custody of Mrs. Borden after she was arrested on an outstanding warrant.

46.	Because Mrs. Borden cannot go for prolonged periods without taking her epilepsy medications, upon being processed into the Jail, Mrs. Borden informed employees of the Jail of her condition and that she was required to take Keppra 1000mg twice a day.

47.	Knowing the severity of her condition–and in fear of not being taken seriously–Mrs.

11

Borden ostentatiously informed the Jail employees that she suffered from a severe form of epilepsy and that a failure to take her medication (Keppra 1000mg) would cause her significant harm that would likely require hospitalization. To corroborate her statements, Mrs. Borden further informed the Jail employees that she was prescribed 1000mg–the highest dosage allowed.

48.     Mrs. Borden also informed the Jail employees that she had not taken her Medicine that day and that she was at risk for having a seizure *very soon*.

#### Despite Notice–Defendants Completely Ignored Mrs. Borden's Medical Needs

49.     Mrs. Borden placed a request for her medication from the Jail pharmacy. Despite her request and warning that she was at imminent risk of having a seizure, the Jail refused to provide Mrs. Borden with her prescribed medication. Instead–as a matter of policy–the Jail only provided her with two mats, one for her bed, and the other for the floor in case she had a seizure.

50.     Mrs. Borden did not engage in any conduct that violated Jail policy or warranted disciplinary action.

51.     Additionally, as to her commissary, Mrs. Borden requested–*and paid for*–two pair of underwear but the Jail staff refused to give them to her. They later refused Mrs. Borden access to commissary altogether, including food, because she was intentionally–and unnecessarily–housed in a disciplinary tank due to her medical condition, instead of a cell reserved for inmates with disabilities.

#### Mrs. Borden Was Denied Adequate Medical Treatment After her *First* Seizure

52.     Monday, April 30, 2018, Mrs. Borden, while being held in a disciplinary tank, had a seizure. She did not receive any medical assistance during or after her seizure.

53.     When Mrs. Borden was finally able to gain control over her body and move, she pushed the button in the cell to request medical assistance three times, but each time she was ignored by Detention Officer August–the Jail employee on-duty at the receiving end of the call button. Adding

insult to injury–Detention Officer August looked Mrs. Borden directly in her face as she ignored her requests for medical attention.

**Mrs. Borden Was Denied Adequate Medical Treatment After Her _Second_ Seizure**

54. Tuesday, May 1, 2018, Mrs. Borden requested her medication again–informing the Jail employees that she just recently had seizure the day before–but to no avail.

55. Unsurprisingly, that afternoon, Mrs. Borden had her second seizure while in the Jail. During this seizure, in addition to urinating on herself, Mrs. Borden hit her head on the ground.

56. After her second seizure, Mrs. Borden did not receive any medical assistance and the guard(s) watching her tank ignored Mrs. Borden's pushes of the call button–seeking medical care.

57. The other inmates informed Mrs. Borden that the guards routinely disable the call buttons and that she could request her medication using the kiosk in her cell.

58. Growing intolerant of her bodily odor and rank condition, Mrs. Borden asked the guard on shift, Detention Officer Edwards, to provide her with clean clothes and to call medical personnel because she had urinated on herself and injured her head during her second seizure. Borden even explained to the Jail staff that she was experiencing a heavy menstrual flow and was in dire need of new underwear–as the current underwear was soiled with urine and blood. Officer Edwards responded by yelling:

> "_I'm so sick of y'all asking me to do shit. That's what that the kiosk is for. That ain't in my job description, stop asking me._"

59. Mrs. Borden was forced to remain in her soiled clothes and was denied medical treatment for her seizures and the knot that she now had on her head.

60. Mr. Attalia Borden (Tacoma's husband) came to the Jail trying to make sure that Mrs. Borden was being given her medicine. He was told by multiple Jail employees that he was not allowed to bring her medicine. Mr. Borden had to threaten to go to the media–who was already outside covering a story for a slain officer–in order to get the Jail staff to allow him to give Mrs.

13

Borden her medication. That's when the nurse asked to see Mrs. Borden's medication bottle and said they have that medication at the jail and Mrs. Borden should have been receiving it. Although Mr. Borden was successful in forcing the Jail to provide Mrs. Borden with her medicine, Mrs. Borden still did not receive her medication until after her second seizure in the Jail.

61. While at the Jail, Mr. Borden made a complaint with Sergeant Youngblood. It was only after meeting with Mr. Borden that Sergeant Youngblood responded to Mrs. Borden's incessant requests to speak with a supervisor.

62. Mrs. Borden then filed a grievance complaining of the Jail employees' behavior and mistreatment to Sergeant Youngblood. Youngblood addressed one of the employees in Mrs. Borden's presence–revealing Mrs. Borden's identity as the source of the complaint–causing her great discomfort and fear of retaliation.

63. Youngblood then ensured that Mrs. Borden that she would receive her medication for this first time since she had been in jail.

**Mrs. Borden Was Deprived of Adequate Treatment After Her _Third_ Seizure**

64. Thursday, May 3, 2018, at approximately 7:30 pm, Mrs. Borden had her third seizure– where she urinated on herself (*again*) and hit her leg on the metal bed ladder.

65. After learning of Borden's seizure, the Jailers informed the Jail medical staff. The medical personnel arrived, and they repeatedly called Mrs. Borden's name and simply checked her blood pressure.

66. The Jail medical personnel did not transport Borden to the medical center for observation or treatment.

67. The Jail medical personnel did not consult a physician regarding Mrs. Borden's condition.

68. Friday, May 4, 2018, Borden learned the jail employees seemingly reported that she suffered a seizure at 1:00 am, which was incorrect and purposely falsified. According to Nurse

Rabius, the Jail staff stated that there was nothing they could do for Mrs. Borden since her seizure occurred at 1:00 am, and that they just told her to sleep it off. That's also when Rabius followed by intentionally falsifying Mrs. Borden's blood pressure.

69. Jail Medical personnel, Nurse Rabius, checked Mrs. Borden's vitals and wrote that her blood pressure was 116/48 when it was 84/48. Shocked by Rabius' attempt to falsify her blood pressure, Mrs. Borden asked "who's blood pressure is that?"–challenging the recorded blood pressure.

70. Mrs. Borden was forced to sleep in her soiled clothes further soiling her bed sheet and blanket. Also, on May 3rd when she had a seizure, her cell mate Ms. Brenda called Mr. Borden (Tacoma's husband), about it to inform him of her seizure and how the Jail tried to lie and record a different time of when she had a seizure. Mrs. Borden had a seizure around 7:25 pm and the time stamp on when Mr. Borden was contacted and notified of Mrs. Borden's seizure was 7:40 pm.

71. Mrs. Borden's health was in such poor condition that she was unable to walk and had to be transported via wheelchair.

72. While she was still in her blood and urine soiled clothes, Mrs. Borden was taken to court in Katy, Texas. Mrs. Borden had to be given a wheelchair because she could not walk.

73. When Mrs. Borden returned from court, she was placed back into a disciplinary tank where she was not allowed to dispose of her menstrual pads and did not get to shower until after 12 a.m. the next morning.

74. Borden filed a grievance against the guard in that tank for not letting her dispose of her tampon and pads and not giving her clothes as she requested. It was not until Mrs. Borden's cellmates (one of which, Mrs. Borden knew as Ms. Jackie) complained of Borden's foul odor that Sergeant Youngblood was contacted. Mrs. Borden did not get to shower immediately because she

15

had not been given any new underwear. Borden did not receive new underwear until after Sergeant Youngblood left his shift. Because of this, Borden did not shower until the early morning.

75. Mrs. Borden was also denied commissary and access to the phone.

76. Also, when Mrs. Borden got to precinct 3 court for tickets in Katy the presiding judge, Judge Lawrence, also told her to file a grievance after learning of the poor conditions and treatment Borden was being subjected to.

77. When Mrs. Borden returned from court she was called down to medical but was refused treatment once she got down there because they insisted Mrs. Borden's seizure was at 1:00 am, and not the correct time. So, they refused to treat Mrs. Borden because she refused to accept their falsified–or otherwise inaccurate–records. The Jail staff even went so far as to blame Sergeant Youngblood, stating he is the one who told them that her seizure occurred at 1:00 am, which was impossible because Sergeant Youngblood visited her before 1:00 am–before her seizure.

78. Mrs. Borden asked for the supervisor in medical (Garza) and she was told that Garza wasn't there. They then wheeled Borden back to her cell.

79. Ten minutes after getting back from medical, Borden was told that she had to leave general population back into the disciplinary tank because she required a wheelchair, and that detainees in her condition were not allowed in general population. Detention Officer Baines told Mrs. Borden that Medical personnel stated "*as long as she had to use a wheelchair she would have to be in the disciplinary tank.*" Essentially, punishing Mrs. Borden for her disability and/or in retaliation due to Borden's remarking on their malfeasance.

80. Sunday, May 6, 2018, Mrs. Borden saw a female nurse practitioner who apologized for the way she had been treated and inquired about why she had not been seen by medical personnel previously.

81. Mrs. Borden continued her requests for underwear, but Defendants continued their disregard to her requests. Borden again explained to the Jail staff that she was experiencing a heavy menstrual flow and was in dire need of new underwear–as the current underwear was soiled with urine and blood.

82. The individual defendants refused to provide her with new underwear or feminine pads yet Defendants Garriques, Ganey, Graham, Pedone, Bain and other Defendant Deputies–at one point in time–instructed her to take a shower nonetheless. Such a suggestion is unreasonable, cruel and indicative of not only their individual deliberate indifference to Mrs. Borden's condition, but the culture of indifference and widespread disregard of the constitutional rights and privileges of inmates that permeates throughout the Jail.

83. Understandably, given Mrs. Borden's current hygienic and medical state, she did not want to shower without having clean underwear and menstrual pads to put on afterwards.

84. On May 7, 2018, Mrs. Borden was moved out of the disciplinary tank and her commissary and phone privileges were restored.

85. Wednesday, May 9, 2018, Mrs. Borden was transferred to the Harris County Jail, the Harris County Jail was over-crowded, so she was not fully booked into their system until Thursday, May 10, 2018. Mrs. Borden informed the medical staff about her seizures and that she had not received her medication in days.

**Mrs. Borden Had A _Fourth_ Seizure at The Harris County Jail**

86. Friday, May 11, 2018, during Mrs. Borden's fourth seizure she was kicked in the neck, began to foam at the mouth, and bit her tongue. She was taken to the infirmary where she informed the doctor about her swollen tongue and loss of feeling in her legs and feet.

87. A female doctor took a pen and ran it across Mrs. Borden's feet then proceeded to press needles into Mrs. Borden's feet and legs when Mrs. Borden did not react. A male doctor confirmed

17

that Mrs. Borden was suffering from Todd Paralysis and suggested that she be taken to a hospital. Even though Mrs. Borden could not walk, cuffs remained around her ankles while she was at the hospital.

88.     Saturday, May 12, 2018, Mrs. Borden checked herself out of the hospital, so she could tell her husband about her medical condition. She could not walk and was paralyzed from mid-thigh to her feet and the officer who was escorted with her to the hospital did not allow anyone to notify her husband while she was at the hospital. The medical handbook at Ben Taub Hospital states that a prisoner in the hospital has the right to notify his or her spouse.

**Defendants' Gross Negligence and/or Deliberate Indifference to Her Constitutional Rights**
***Unnecessarily* Prolonged Mrs. Borden's Incarceration**

89.     After being discharged from the hospital, Mrs. Borden was returned to Harris County Jail's infirmary–in custody–where a detention officer gave Mrs. Borden her bond paperwork.

90.     Mrs. Borden learned that she was bonded out on Friday–the day before, however–Mrs. Borden was told that she had to remain in jail for the speeding tickets she received in Precinct 7 and for her failure to appear in court.

91.     Sunday, May 13, 2018, Mrs. Borden went to court–*again*–for tickets she already served time for.

92.     Due to the negligent or malicious conduct of the Fort Bent County Jail employees, Harris County and Precinct 7 allegedly had not been notified about the time Mrs. Borden served at Fort Bend County Jail, which unnecessarily extended her incarceration by two (2) days.

93.     Upon Mrs. Borden's release, she was unable to walk. Mrs. Borden returned to the hospital and was informed that she had sprained both her neck and knee during her seizures. Additionally, Mrs. Borden was *denied* copies of her grievance reports and medical information by Fort Bend. Documents were missing out of Mrs. Borden's record and jail packet when she received it and she was told that no confirmation of the time she had served had been sent to Harris County.

**II. The Policies, Practices, and Customs of the Fort Bend County Create Grossly Unsanitary, Inhumane, and Dangerous Conditions for the Individuals They Detain**

94.     There is an official policy in place or widespread practice at the Fort Bend County Jail, to deny or delay medical care and legal prescriptions for inmates with preexisting conditions, such as Borden, and providing negligent and/or inadequate care.

95.     Defendants promulgated and/or practiced the policy to deny or delay medical care and legal prescriptions for inmates with preexisting conditions, which results in inmates' denial of medical care, improper medical care, inadequate medical care.

96.     The County's policy, practice, and custom was to disregard the preexisting medical conditions and legal prescriptions identified during the intake interview, and deny outright, or provide inmates with substituted minimal care without the requirement of consulting with a physician.

97.     There is an official policy in place or persistent and widespread practice of denying inmates with preexisting medical conditions, including epilepsy, measures for preventative care, adequate monitoring, seizure-safe housing, or independent treatment plans.

98.     There is an official policy in place or persistent and widespread practice in Fort Bend of only providing inmates with preexisting medical conditions that cause seizures, including epilepsy, an additional mat to reduce the pain suffered from the foreseeable fall that will result from having a seizure.

99.     There is an official policy in place or persistent and widespread practice of denying inmates with preexisting medical conditions–that affect their continence–basic hygienic necessities as needed, including but not limited to, clean underwear, clean clothing, access to shower and feminine hygiene products.

100.    There is an official policy or widespread practice of housing inmates with serious medical needs in a disciplinary tank–without regard to their disciplinary history, or lack thereof.

Disciplinary tanks, *inter alia,* are not given commissary or free access to a phone and the occupants are placed on a different shower and feeding schedule. Accordingly, Fort Bend has a policy of depriving inmates with serious medical conditions rights and privileges afforded to inmates without disabilities or medical conditions. Fort Bend County's policy discriminates against persons with disabilities, and thus, unconstitutional on its face.

101. Defendants' recordkeeping policies or practices–which do not require time stamps or entries–are so deficient as amount to manifestly indefensible conduct, which also evidences their deliberate indifference to the needs, care and protection of Fort Bend County Jail inmates– including Borden.

102. The policymakers failed to develop and institute adequate reality-based training programs relating to the incarceration, care and treatment of individuals such as Mrs. Borden who has a pre-existing medical condition that affects her continence and causes involuntary seizures.

103. In fact, Defendants were not adequately trained how to treat and/or accommodate inmates with epilepsy and were not able to properly assess, treat or accommodate Mrs. Borden. Thus, Fort Bend County was, and is, insufficiently staffed this area–although it is highly likely that its inmates may enter the Jail with common illnesses such as epilepsy. Given the likelihood of encountering inmates with preexisting medical conditions and needs, such as Mrs. Borden's, Fort Bend's failure to develop, implement and/or enforce adequate policies and its failure to train its employees in this area amounts to deliberate indifference.

104. Such policies, in addition to being unconstitutional, profit-motivated and/or deliberately indifferent to the inmates' medical needs, including Borden's, were developed, implemented, adopted and/or encouraged for punitive purposes.

105. All of which, jointly or severally, caused or contributed to the culture of deliberate

indifference to the serious medical needs of the inmates in Fort Bend County Jail, including Mrs. Borden's.

**III. Plaintiffs Experienced Harassment and Retaliation After Mrs. Borden Was Released**

106. Additionally, since Mrs. Borden was released from Jail, her and her family have been subjected to harassment and retaliation–presumably stemming from her post-release complaints regarding her incarceration. Namely, Fort Bend County Deputies, primarily Deputy T. James, have made multiple random stops by their house–one of which was solely to question them about the ownership of their recently-purchased vehicle. Plaintiffs complaints of being victims of harassment and other criminal activity have gone ignored by the Fort Bend County Sheriff's Office. On another occasion, Deputy T. James–assisted or accompanied by other deputies– followed Mr. Borden into a private parking lot and subsequently detained him in order to verify his handicap status after Mr. Borden parked in a handicap space. Most recently, Fort Bend County Sheriff's Office harassed and retaliated against Plaintiffs by maliciously seeking prosecution and arresting Mr. Borden based upon false allegations.

**VI.**
**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION—42 U.S.C. § 1983 VIOLATIONS**

107. Plaintiffs re-allege all of the allegations in the previous paragraphs, as though fully set forth herein.

108. Plaintiffs brings claims against each defendant pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's rights under the U.S. Constitution. *42 U.S.C. § 1983*.

109. Each Individual Defendant, while acting under color of state law, under the authority of the County of Fort Bend in the State of Texas, deprived Plaintiff Tacoma Borden of her clearly-

established rights secured to her by the Fifth and Fourteenth Amendments to United States Constitution, and such violations were the proximate cause and/or moving force behind her injuries.

110. Each Defendant–*including* Fort Bend County–were all moving pieces in depriving Tacoma Borden of her rights, privileges and immunities secured by the Fifth and Fourteenth Amendments to the U.S. Constitution including, but not limited to, the right to be free from cruel and unusual punishment (to the extent it is applicable through the due process clause of the Fourteenth Amendment); inhumane and unsanitary conditions of confinement; unreasonable seizures; double jeopardy and the right to timely adequate medical care when incarcerated.

### a. Failure to Adopt Policies Regarding Providing Medical Care to Inmates with in Imminent Risk of Medical Emergency and Defendants' Deliberate Indifference to Mrs. Borden's Serious Medical Needs

111. Fort Bend County failed to adopt, implement or enforce constitutionally adequate policies designed to prevent inmates with preexisting medical conditions–such as epilepsy–from being deprived of adequate medical care and subjected to inhumane and unsanitary conditions of confinement.

112. Further, Fort Bend County's policy of housing inmates with serious medical conditions in disciplinary tanks is facially unconstitutional and the deprivation of rights and privileges Mrs. Borden suffered as a result are directly caused by Fort Bend County, Nehls and other policymakers.

113. With respect to the failure to provide medical attention, Plaintiff brings claims against Fort Bend County and the remaining defendants in their individual capacities for "deliberate indifference to serious medical need[1]" in violation of Tacoma Borden's Fifth and Fourteenth

---

[1] "Deliberate indifference" to a prisoner's serious medical needs occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists but then disregards that risk. The Fourteenth Amendment also requires that pretrial detainees be provided medical care to at least the extent that is required for those who have been convicted of a crime.

Amendment rights.[2]

114.     Fort Bend County and the individual defendants each had subjective knowledge of a substantial health risk to Tacoma Borden (upon learning that she would suffer from seizures if she did not receive her medication and that she had not taken her medication that day), and each disregarded that risk by failing to take reasonable measures to provide her with her needed medication or provide adequate alternative or preventative medical care. Each defendant was made aware of Mrs. Borden's medical condition and each defendant demonstrated a wanton disregard to Mrs. Borden's serious medical needs.

115.     Through their policies and practices as described herein, Defendants were deliberately indifferent to Mrs. Borden's known medical needs. Defendants were aware that Mrs. Borden suffered from a severe form of epilepsy and complained of having multiple seizures, but deliberately refused to provide her with necessary medical treatment or medical care over the course of her 8-day stay in Jail.

   **b. Failure to Adopt Policies Regarding Providing Medical Care and Minimal Civilized Measures of Basic Needs to Inmates with Medical Conditions That Affect The Inmate's Continence; Unsanitary and Inhumane Conditions of Confinement**

116.     Through their policies, practices and conduct as described herein, Defendants subjected Mrs. Borden to extreme, grossly unsafe conditions of confinement that posed a risk of serious harm to her safety and violated contemporary standards of decency, in violation of her Fourteenth Amendment.

117.     Fort Bend County and the individual defendants each had subjective knowledge that Mrs. Borden was on her menstrual cycle and that she urinated on herself during each seizure. Each defendant was further aware that Mrs. Borden had not been given new underwear, clean clothes, clean feminine pads or access to a shower. In fact, Mrs. Borden was told that because she was in

---

[2] *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

a disciplinary tank that–*per policy*–she would only be allowed to shower after 12:00 am. No reasonable accommodation was made for Mrs. Borden.

118. Despite being seen by numerous Jail employees after her seizures, each defendant failed to provide Mrs. Borden with clean underwear, clean clothes, clean feminine pads or provide her with access to a shower. This massive failure demonstrates the woefully inadequate nature of Fort Bend County Jail's policies and procedures for providing adequate medical care and humane and decent conditions of confinement for its inmates. In the alternative, the Defendants' repeated and routine failure to meet the constitutionally–mandated standard demonstrates Fort Bend County's failure to implement constitutionally adequate policies.

119. Any reasonable person, irrespective of policy, would have provided Mrs. Borden clean clothes and immediate access to shower after soiling herself given her medical condition.

120. Further, subjecting Mrs. Borden to such inhumane conditions and then forcing her to travel and make a public appearance in a courtroom in her condition demonstrates not only a deliberate indifference, but malicious intent to cause Mrs. Borden severe emotional harm. This type of conscious-shocking conduct cannot be explained by mere momentary thoughtlessness, inadvertence or error in judgment, as the emotional harm Mrs. Borden suffered was not simply a likely possibility, but rather it was manufactured with intent by all employees who came into contact with her condition.

121. Although the policymakers, Fort Bend County, Sheriff Troy Nehls, Garza and John Doe Policymakers were on notice of the obvious need to oversee, monitor, supervise, and train the jailers, nurses, physician assistants, and jail staff with whom they entrusted such responsibility in the area of day-to-day jail operations, policies and procedures relating to medical assessment, medical monitoring, follow up care of inmates and provision of basic necessities, they failed to adequately train and supervise the individual jail staff in that regard.

24

**c. Failure to Adopt Adequate Hiring, Training and Supervising Policies Regarding Treatment, Handling and Accommodations of Inmates With Preexisting Conditions Causing Incontinence**

122. Plaintiffs assert a failure to train and supervise claim against Fort Bend County.

123. Defendant Fort Bend County owed a duty to Tacoma Borden to exercise ordinary care in the hiring, training and supervising Fort Bend County Jail doctors, nurses, jailers, and other personnel, as well as adopting, implementing and enforcing constitutionally-adequate policies. Despite such duty, Defendants Fort Bend County, Sheriff Nehls, Kovar and other supervisory or policymaking defendants failed to adopt adequate hiring, training and supervisory policies to protect Mrs. Borden from the unconstitutional conditions of confinement she was subjected to and protection from the harm that naturally follows when they, as supervisors failed to train or supervise the subordinate jail and/or medical staff and officers who attended to Mrs. Borden.

124. Evidenced by each Defendant's replete failures to provide timely or adequate care for Mrs. Borden's imminent and obvious medical and basic needs, each individual defendant was inadequately trained or supervised on how to care for inmates with preexisting medical conditions, such as Mrs. Borden's. Such failures–demonstrate Defendant County's, and its policymakers' deliberate indifference to the need for adequate policies, training and supervision–and were the moving force behind the deprivation of her federally-protected rights.

**d. Defendants' Causing Mrs. Borden's Sentences to Run Consecutively Instead of Concurrently Amounts To An Unreasonable Seizure; and Double Jeopardy**

125. Plaintiffs also allege Fort Bend County, its policymakers and other John or Jane Doe Defendants subjected Mrs. Borden to an unreasonable seizure of her person in violation of her rights secured to her under the Fifth and Fourteenth Amendments to the United States Constitution.

126. Fort Bend County, its policymakers and other John or Jane Doe Defendants, through their unconstitutional or inadequate policies and practices, failure to train and supervise or through manifestly indefensible conduct, caused Mrs. Borden to be incarcerate more than forty-eight (48)

hours after she served her time owed to society.

127. Namely, Fort Bend County, its policymakers and other John or Jane Doe Defendants failed to properly notify each municipal county or precinct of the time she served, and as a result, she did not receive credit for the time served and was forced to go to court and answer to previously adjudicated citations.

128. Said actions or omissions of each defendant were deliberately indifferent to Mrs. Borden's constitutional rights, manifestly indefensible, pursuant to–or with subsequent or simultaneous approval of Fort Bend County policies, practices and customs and the moving force behind her injuries described herein, for which Plaintiffs now seeks redress.

## SECOND CAUSE OF ACTION–AMERICANS WITH DISABILITIES ACT VIOLATIONS (ADA)

129. Plaintiffs re-allege all of the allegations in the previous paragraphs, as though fully set forth herein.

130. Plaintiffs further bring a disability discrimination claim under Title II of the ADA, as Defendants Fort Bend County, Sheriff Troy Nehls, Kovar, Individual Defendants (to the exclusion of Deputy T. James), Policymakers John Does and Jailer John Does, while acting under color of state law, under the authority of the County of Fort Bend in State of Texas, discriminated and retaliated against Mrs. Borden on the basis of her medical disability.

131. For years Borden had been diagnosed with epilepsy and as a result, she has an active prescription for Keppra. Defendants knew of Borden's medical conditions as Borden disclosed them during her jail intake medical screening, and in her various treatments thereafter. Further, according to Jail records, Borden informed them she had seizures while in the Jail. The accommodations that should have been provided to Mrs. Borden without a request, were denied or delayed.

132. In fact, Defendants subjected Borden to worse conditions due to her disability.

133. Due to her medical condition, Mrs. Borden required a wheelchair while in the Jail.

134. Mrs. Borden received differential treatment in her housing assignment, allegedly because her medical condition confined her to a wheelchair. However, Borden was not moved to a medical cell, instead she was housed in a disciplinary tank.

135. Said differential treatment (or housing assignment) denied her the same rights and privileges of non-wheelchair-bound inmates.

136. Namely, Mrs. Borden was denied equal access to a phone as other inmates who were not housed in a disciplinary tank.

137. Further, said differential treatment (or housing assignment) denied Mrs. Borden equal access to commissary privileges.

138. Borden was discriminated or retaliated against because her medical condition required her to be confined to a wheelchair, which caused angst against Mrs. Borden among the jail and medical staff.

139. Because of her medical condition, Borden was denied adequate care (including, but not limited to) disregard to her complaints of serious medical conditions, reprimanded for requesting accommodations, denied feminine hygiene products, clean clothes, commissary, medication and was housed in a disciplinary tank.

140. Fort Bend County Jail receives funding from the Federal Government.

141. Borden requested an accommodation for her medical conditions from the Fort Bend County, Fort Bend County jail staff and its medical providers, including contractors, because she was suffering from or experiencing epileptic seizures, but they were denied, along with the appropriate medical care, as she did not receive a medical assessment for her chief complaints, but rather–in a formulaic fashion–given inadequate treatment for her well-known epileptic problems.

142. In contradiction of her Jail medical records, Borden's claims that he was suffering

seizure(s) were completely ignored and went unattended, a benefit any otherwise healthy (or non-disabled) inmate or patient would have received. But for Borden's repetitive–and necessary–medical needs, she would have received the benefit of having her chief complaints examined and treated. Such treatment is a denial of benefits and discriminatory treatment under the Defendants' program solely based on her disability.

143.    Additionally, despite Defendants' failure to accommodate Mrs. Borden's medical conditions, compliant supervision could have likely assisted in getting medical attention to Borden sooner, not only did she go without clean clothes, feminine hygiene products and medications–but they denied her commissary due to her disability, a basic right granted to all inmates.

144.    Borden is a qualified person with a disability, as defined under the ADA since she has suffered from epilepsy. As a qualified person with a disability under the ADA, she was deprived reasonable accommodations, by Fort Bend County by depriving Borden reasonable accommodations by the above-named entities violated the Americans with Disabilities Act, as amended. Mrs. Borden suffered from an exacerbation of pre-existing conditions, including not limited to, multiple seizures, TODD paralysis, altered mental state, inhumane conditions and strokes as a result of the failure to provide her a reasonable accommodation.

### THIRD CAUSE OF ACTION—LOSS OF SERVICES, CONSORTIUM, COMPANIONSHIP, AND SOCIETY OF MR. BORDEN; RETALIATION

145.    Plaintiffs re-allege all of the allegations in the previous paragraphs, as though fully set forth herein.

146.    Under Texas law, either spouse has a derivative claim for loss of consortium that may arise as a result of an injury caused to the other spouse by a third-party tortfeasor's negligence.[3] Under Texas law, loss of comfort and society is proper element of damage where there is evidence of

---

[3] *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex. 1978); *Barker v. Halliburton Co.*, 645 F.3d 297, 299 (5th Cir. 2011).

wife's inability to accomplish tasks after injury which were performed before injury.[4]

147. Mr. Borden asserts that Defendants were negligent in mishandling Mrs. Borden's treatment and deprivation of proper medicine, humane and sanitary conditions of confinement and adequate medical care. Since her release from Fort Bend County, Mrs. Borden's behavior changed: she does not spend as much time with him or their child, and the quality and substance of the time she does spend is not the same, she has developed severe paranoia, a severe fear of all law enforcement personnel, she suffers from PTSD, she does not engage in sexual relations as much as he did prior to incarceration, she does not adhere to transportation signs when driving–even when her child is in the vehicle, and in addition, due to the aggravation of her medical condition, she has forfeited her driver's license and can no longer drive.

**FOURTH CAUSE OF ACTION—RETALIATION**

148. Plaintiffs re-allege all of the allegations in the previous paragraphs, as though fully set forth herein.

149. As direct and proximate cause of Plaintiffs' complaints about Mrs. Borden's treatment while in Jail, both, Mr. and Mrs. Borden have experienced retaliation from Fort Bend County via its officers and presumably its policymakers.

150. Namely, after Mrs. Borden was released from Jail and sent notice of her complaints against Fort Bend County and Sheriff Nehls, Fort Bend County, Deputy T. James and other Fort Bend County deputies began harassing Plaintiffs, including but not limited to, (1) Deputy T. James randomly stopping by their house; (2) Fort Bend County Sheriff's Office ignoring their requests for police assistance; (3) Deputy T. James and other deputies harassing Mr. Borden in a private parking lot; (4) Deputy T. James, and presumably other deputies, telling Plaintiffs' neighbors about Mrs. Borden's arrest and incarceration–and the complaints she filed related to her incarceration;

---

[4] *Id.*

and (5) Deputy T. James wrongfully arresting Mr. Borden.

## VII.
## DAMAGES

151.    Plaintiffs re-allege all of the allegations in the previous paragraphs, as through fully set forth herein.

152.    After being released from jail, Mrs. Borden returned to the hospital and was informed that she suffered seizures, a stroke, paralysis which has caused visual impairment. Mrs. Borden also learned that she sprained both her neck, knee and upper arm during her seizures. A female doctor took a pen and ran it across Mrs. Borden's feet then proceeded to press needles into Mrs. Borden's feet and legs when Mrs. Borden did not react. It was confirmed that Mrs. Borden was suffering from Todd Paralysis and suggested that she be taken to a hospital.

153.    Given Mrs. Borden's declining mental state, she sought psychological help and learned that as a result of this incident, she developed Post Traumatic Stress Disorder ("PSTD").

154.    This pain from said injures has been consistent, and will likely continue for the foreseeable future.

155.    Additionally, when Mrs. Borden returned to the jail to collect her records, and she was denied the opportunity to obtain copies of her grievance reports and medical information by Fort Bend. The file she was provided had documents missing out of her record. All of which compounded her stress and exacerbated Mrs. Borden's injuries–physically and emotionally.

156.    Further, given the harassment and retaliation they are experiencing, Mr. and Mrs. Borden no longer feel safe, welcome or comfortable in their home, neighborhood or anywhere within Fort Bend County.

157.    As a direct and proximate result of Defendants' actions or omissions, Borden experienced severe physical pain and emotional trauma while in the custody and care of the Fort Bend County Jail, and thereafter.

158. Plaintiffs have and will continue to sustain loss of earnings and earning capacity; and have incurred and will continue to incur expenses for psychological treatment, therapy and counseling.

159. Plaintiffs requests the following relief:

    a. Compensatory, general and nominal damages against each Defendant, jointly and severally, in the amount proven at trial:

    b. Plaintiffs seek actual damages, both general, and special, for the injuries and damages:

    c. Mental Anguish suffered by Tacoma Borden-past, present, and future.

    d. Physical pain sustained by Tacoma Borden-past, present and future.

    e. Compensatory special damages-past, present, and future.

    f. Reasonable and necessary medical expenses incurred by Tacoma Borden-past, present, and future.

    g. Loss of consortium suffered by Mr. Borden; and

    h. Loss of comfort and society suffered by Mr. Borden;

    i. Plaintiff seek to recover all costs, expenses, expert fees including reasonable and necessary attorney's fees under Section 1988, or any other applicable law, incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to, as the Court deems equitable and just-past, present, and future.

## VIII.
## PUNITIVE DAMAGES

160. Mr. and Mrs. Borden are entitled to exemplary damages based on Defendants' conduct as described above. Defendants had actual awareness of the degree of risk involved as well as the foreseeable consequences in their treatment of Borden, yet proceeded with conscious disregard to said risks.

161. The Individual Defendants' conduct was more than mere momentary thoughtlessness, inadvertence, or error of judgment. Rather, the acts and omissions of Defendants complained of

herein were committed with malice, intent, deliberate disregard and reckless or callous indifference to the federally protected rights of Mrs. Borden. In order to punish Defendants for engaging in unlawful practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages. [5]

162. Borden's injuries resulted from the joint and several acts of Defendants for which Plaintiff seeks punitive and exemplary damages against each individual Defendant (as allowed by law) in an amount appropriate to punish each individual Defendant, and deter others from engaging in similar conduct; Award punitive damages against Sheriff Troy Nehls, John Does and Jailer John Does, in an amount to be shown at trial;

163. Plaintiff asserts that the injuries of Tacoma Borden was the result of Defendants, Fort Bend County, Texas, Fort Bend County Jail, Troy S. Nehls, and John and Jane Does jointly and severally, that the harm suffered was the result of Defendants' conduct motivated by evil motive or intent, or done with callous indifference to the federally protected rights of Borden, and hereby entitles Plaintiff to punitive/exemplary damages.

## IX.
## JURY DEMAND

164. Plaintiffs hereby demand a trial by jury.

## X.
## PRAYER

165. WHEREFORE PREMISES CONSIDERED, Plaintiffs Tacoma Borden and Attalia Borden respectfully pray that Defendants Fort Bend County, Texas, Sheriff Troy E. Nehls, Lieutenant Jeff Kovar, Sergeant Conger, Sergeant Ganey, Deputy Graham, Deputy T. James, Deputy T. Garriques, Garza, Deputy Pedone, Deputy F. Bain, Deputy D. Edwards, Deputy K. Guidry-August, Deputy Holman, Kloeber, Narinsingh, Rains, Rabius and John and Jane Does be summoned to appear and

---

[5] *Smith v. Wade*, 461 U.S. 30 (1983).

answer herein, and that upon a final hearing of this cause, that judgment be entered for the Plaintiffs and against each Defendant, both jointly and severally, for all damages requested herein, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and further relief to which Plaintiff may be entitled at law or in equity; punish each individual Defendant, and deter others from engaging in similar conduct;

166. Award equitable relief, including, without limitation, that Fort Bend County, Texas, and the Individual Defendants, be made to admit fault, apologize and to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; and such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

Respectfully submitted,

**ANDRE EVANS & ASSOCIATES, PLLC**

*/s/ Andre D. Evans*
ANDRE D. EVANS
Federal Bar I.D. No. 2553080
Texas State Bar No. 24082970
3003 South Loop West, Suite 108
Houston, Texas 77054
T: (832) 941-1282
F: (832) 778-8353
andre@attorneyandreevans.com

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I certify that, pursuant to Federal Rules of Civil Procedure, a true copy of the instrument to which this certificate is attached was duly served upon each party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following:

Ruhee Grewal Leonard
Kevin Hedges
Assistant Fort Bend County Attorneys
401 Jackson Street, 3rd Floor
Richmond, Texas 77469
[Tel.] (281) 341-4555
[Fax] (281) 341-4557
Ruhee.Leonard@fortbendcountytx.gov
Kevin.Hedges@fortbendcountytx.gov

*/s/Andre D. Evans*
Andre D. Evans