# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TACOMA BORDEN and ATTALIA BORDEN, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-551 |
| | § | |
| FORT BEND COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss filed by defendants Kloeber, Narinsingh, Rains, Rabius, Luckstead and Garza (collectively, the "Medical Defendants").[1] Dkt. 33. After reviewing the motion and applicable law, the court is of the opinion that it should be GRANTED IN PART AND DENIED IN PART.

### I. BACKGROUND

The case involves alleged constitutional violations associated with Tacoma Borden's time as an inmate in the Fort Bend County Jail. Tacoma Borden, who suffers from epilepsy and severe seizures, alleges that while she was incarcerated the Medical Defendants deprived her of needed medical care, subjected her to inequitable treatment, and subjected her to punitive conditions of confinement, resulting in compensable injuries to herself and her husband, Attalia Borden. Dkt. 32. The Bordens seek a remedy under 42 U.S.C. § 1983 for alleged constitutional violations. *Id.* The

---

[1] The complaint provides only surnames for these defendants. *See* Dkt. 32.

Bordens additionally allege that Tacoma Borden's treatment while under the care of the defendants gives rise to claims under the Americans with Disabilities Act (ADA) and state tort claims.[2] *Id*.

The Bordens filed their original complaint in February 2019 against Fort Bend County, individuals employed in policymaking or correction officers roles for Fort Bend County (collectively "FBC Defendants"), as well as the Medical Defendants. Dkt. 1. The Medical Defendants filed a motion to dismiss. Dkt. 4. In July 2019, the Bordens filed an amended complaint that included similar allegations. Dkt. 7. In August 2019, the FBC Defendants filled a Rule 12(b)(6) motion to dismiss for failure to state a claim, and alternatively a Rule 12(e) motion for a more definite statement. Dkt. 13. The court granted the motion to dismiss the Bordens' Fifth Amendment claim and their state-law claims against all of the FBC Defendants. The court also granted the motion to dismiss the ADA claim against the individual FBC Defendants, the § 1983 claim against defendant James, and the punitive damages claim against Fort Bend County. Dkt. 28. The court denied the motion to dismiss the § 1983 claim as to other individual FBC Defendants and Fort Bend County. Dkt. 28.

In September, the Medical Defendants filed a Rule 12(b)(6) motion to dismiss the amended complaint and alternatively a Rule 12(e) motion for a more definite statement. Dkt 23. The court denied the Rule 12(b)(6) motion without prejudice and granted the motion for the more definite statement, ordering the Bordens to "amend their complaint to provide more information about how each of the Medical Defendants allegedly deprived Tacoma Borden of her constitutional rights." Dkt. 29. In December, the Bordens filed their second amended complaint. Dkt. 32. The Medical Defendants responded with another Rule 12(b)(6) motion to dismiss, addressed here. Dkt. 33.

---

[2] A prior opinion of this court included a more detailed summary of the alleged facts. *See* Dkt. 28.

The plaintiffs did not file a response.

This Medical Defendants' motion to dismiss is now ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

## III. ANALYSIS

The court will first address the Fifth Amendment claim, the state law claims, and the ADA claim with respect to all Medical Defendants. The court will then address the § 1983 conditions-of-confinement claims with respect to all Medical Defendants. Next, the court will consider the § 1983 acts-and-omissions claims with respect to each Medical Defendant. Finally, the court will address whether the plaintiffs' punitive damages claims should be dismissed.

**A. The Fifth Amendment Claim**

The Bordens contend that the Medical Defendants deprived Tacoma Borden of her clearly established rights under both the Fifth and the Fourteenth Amendments to the U.S. Constitution. Dkt. 32. The Medical Defendants argue that the plaintiffs failed to state a constitutional claim. Dkt. 33. The Fifth Amendment only applies to violations of one's constitutional rights by the United States or federal actors. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). The plaintiffs fail to allege that any of the Medical Defendants are federal actors.[3] The Medical Defendants motion to dismiss the Fifth Amendment claim is therefore GRANTED.

**B. The ADA Claim**

The Bordens assert a claim under Title II of the ADA against all individual defendants, including the Medical Defendants, claiming that they discriminated and retaliated against Tacoma Borden on the basis of her medical disability. Dkt. 32. The Medical Defendants argue that individuals cannot be sued in their official capacity under the ADA, citing *Navarette v. Isbell*, No. H-13-2678, 2015 WL 926559, at *3 (S.D. Tex. Mar. 4, 2015). Dkt. 33. The Medical Defendants also argue that the Bordens failed to state with enough specificity what acts by the individual defendants led to compensable harm under the ADA. *Id*.

---

[3]The Bordens state that Fort Bend County Jail receives funding from the federal government. Dkt. 32 ¶ 141. However, the plaintiffs fail to allege that the Medical Defendants in their individual capacities were acting under the authority and control of the federal government at the time that they allegedly violated Tacoma Borden's constitutional rights. *Cf. Boney v. Valline*, 597 F. Supp. 2d 1167, 1174 ( D. Nev. 2009) (determining that, although the tribal police department received funding from the federal government, the officer was not a federal actor because the actions of the police officer were not traditionally the exclusive prerogative of the federal government and there was no symbiotic relationship between the officer and the DOJ) (applying factors set forth in *Rendall-Baker v. Kohn,* 457 U.S. 830, 842 102 S.Ct. 2764 (1982)).

Under Title II of the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" includes state or local governments, "any department, agency, special purpose district, or other instrumentality of a State or States or local government," and the National Railroad Passenger Corporation (and any commuter authority). 42 U.S.C. § 12131. Courts in this district have interpreted this to mean that the statute does not apply to officials sued in their individual capacities, particularly since the Fifth Circuit has interpreted similar language in the Rehabilitation Act to preclude suit against officials in their individual capacities. *See Eustice v. Tex. A&M Univ.*, No. 4:15-CV-03180, 2016 WL 8710444, at *8 (S.D. Tex. Sept. 30, 2016) (Harmon, J.) (collecting cases) ("[C]ourts have concluded that individuals sued only in their individual capacities cannot be considered proper defendants under either Title II of the ADA or the [Rehabilitation Act]."); *Navarette*, 2015 WL 926559, at *3 ("It is well established that individuals cannot be sued under the ADA in their individual capacities."); *Estate of A.R. v. Grier*, No. H-10-0533, 2011 WL 3813253, at * 7 (S.D. Tex. Aug. 26, 2011) (Rosenthal, J.) ("The ADA and Rehabilitation Act do not provide for damages against individuals."); *DeLeon v. City of Alvin Police Dep't*, No. H-09-1022, 2009 WL 3762688, at *3 (S.D. Tex. Nov. 9, 2009) (Hoyt, J.); *Gonzales v. City of Corpus Christi*, No. C.A. C-05-280, 2006 WL 1517507, at *5 (S.D. Tex. May 31, 2006) (Jack, J.); *see also Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999) (interpreting the Rehabilitation Act). The motion to dismiss the ADA claims against the Medical Defendants is therefore GRANTED.

**C. State Tort Claims**

The Bordens assert common law claims under Texas law for loss of consortium[4] and retaliation. Dkt.32. The Medical Defendants argue that the Bordens failed to identify sufficient facts that would support any theory of state tort liability. The Medical Defendants also point out that the plaintiffs failed to allege tort claims against the defendants in their official capacities. Dkt. 33. "[U]nder the common-law doctrine of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act [("TTCA")] waives immunity." *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998). The Bordens fail to state why their state tort claims against the Medical Defendants should survive a sovereign immunity defense, or to claim a waiver under the TTCA. *See* Dkt. 32. Accordingly, the Medical Defendants' motion to dismiss the plaintiffs' claims for loss of consortium and retaliation is GRANTED.

**D. Section 1983 Claims**

The Bordens assert various § 1983 claims. Dkt. 32. They allege that each defendant violated Tacoma Borden's constitutional rights, including her right to be free from unreasonable seizure and inhumane conditions of confinement, and her right to receive adequate medical care while in pretrial detention. *Id.* The plaintiffs contend that Tacoma Borden suffered under unconstitutional conditions of confinement as a result of Fort Bend County policies. Only two of the plaintiffs' conditions-of-confinement theories potentially relate to the Medical Defendants. First, the plaintiffs allege that pursuant to Fort Bend County policy, the Medical Defendants failed to adequately provide medical

---

[4]The plaintiffs titled the third claim "Loss of Services, Consortium, Companionship, and Society of Mr. Borden; Retaliation." Dkt. 32. Under Texas common law, loss of a spouse's services, companionship, or society following that spouse's personal injury give rise to a loss of consortium claim. *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex. 1978).

care to inmates with imminent risk of medical emergency. *Id.* ¶¶ 96–98, 113. Second, the plaintiffs contend that pursuant to County policy, the Medical Defendants failed to provide for Tacoma Borden's basic needs including access to feminine hygiene products, clean underwear, and shower facilities. *Id.* ¶¶ 101, 188–23. Specifically, the plaintiffs contend that the Medical Defendants failed to respond to Tacoma Borden's repeated requests for clean clothes and feminine hygiene products. *Id.*

The Medical Defendants contend that the second amended complaint, like the first, lacks specific factual allegations of how each Medical Defendant violated Tacoma Borden's constitutional rights, which relates to the plausibility of an acts-or-omissions claim under § 1983. Dkt. 33. The Medical Defendants also argue that the plaintiffs failed to state what policies governed the behavior of the Medical Defendants at the time of Tacoma Borden's incarceration, which relates to the adequacy of a conditions-of-confinement claim under § 1983. *Id.*

**1. Legal Standard**

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

In a lawsuit brought against an individual defendant in his or her personal capacity, "'it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right.'" *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). "The constitutional

rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." *Estate of Henson v. Wichita Cty.*, 795 F.3d 456, 462 (5th Cir. 2015). "The Fourteenth Amendment requires that state officials not disregard the 'basic human needs of pretrial detainees, including medical care.'" *Estate of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)); *see also Estate of Henson*, 795 F.3d at 462 (quoting this language from *Krajca*). "[T]he substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee." *Id.* In the Fifth Circuit, the court's analysis depends on whether a plaintiff is alleging an episodic act or omission of an individual state official or the constitutionality of the conditions of confinement. *Estate of Henson*, 795 F.3d at 462. "A challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Id.* at 463 (quoting *Hare*, 74 F.3d at 644). "An episodic-acts-or-omissions claim, by contrast, 'faults specific jail officials for their acts or omissions.'" *Id.* (quoting *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009)). "[T]here is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately." *Id.* at 464.

Courts apply the test found in *Bell v. Wolfish* in conditions-of-confinement cases. *Id.* at 463. The question under *Bell v. Wolfish* is "whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861 (1979). If an act is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Sometimes challenged conditions are explicit, and sometimes they reflect a *de facto* policy. *Estate of Henson*, 795 F.3d at 463.

In an episodic-acts-or-omissions claim, the plaintiff points to specific jail officials for their acts or omissions. *Estate of Henson*, 795 F.3d at 463. The plaintiff complains first of a certain act

8

or omission and then "'derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.'" *Id.* (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). Intentionality is not presumed for episodic-acts-or-omissions claims, and a jail official violates the pretrial detainee's constitutional rights "when the official had 'subjective knowledge of a substantial risk of serious harm' to the detainee and responded to that risk with deliberate indifference." *Id.* at 464 (quoting *Hare*, 74 F.3d at 650). "In other words, the state official must know of and disregard an excessive risk to inmate health and safety." *Id.* In order to demonstrate deliberate indifference in the context of a medical professional failing to adequately treat a pretrial detainee the plaintiff must show that the medical professional "refused to treat him[or her], ignored his[or her] complaints, intentionally treated him[or her] incorrectly or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dept. of Crim. Jusitice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985).

In *Scott v. Moore*, the Fifth Circuit distinguished between conditions-of-confinement and episodic-acts-and-omissions cases by noting that in conditions-of-confinement cases the detainee complains of a "general condition of confinement," where it is generally the conditions themselves that constitute the harm, "for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." 114 F.3d at 53. In contrast, in episodic-acts-or-omissions cases, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* In *Scott*, the Fifth Circuit determined that the facts, which included an

9

allegation of sexual assaults due to inadequate staffing, bore a "closer resemblance to cases regarding episodic acts by prison employees." *Id.*

Similarly, in *In re Estate of Henson*, the Fifth Circuit determined that claims against a physician in charge of the jail who the plaintiffs claimed acted with deliberate indifference in failing to provide appropriate medical evaluation or transport the detainee, who ended up dying in custody, were "properly characterized . . . as attacking episodic acts or omissions rather than conditions of [the detainee's] confinement." 795 F.3d at 464–65. The court further explained that for the conditions-of-confinement "test to apply, a jailer's act or omission must implement a rule or restriction or otherwise demonstrate the existence of an identifiable practice. . . .[I]n the absence of such a condition, practice, rule or restriction, a jail official's acts or omission can give rise to constitutional liability only if he was culpable." *Id*.

The court first evaluates the plaintiffs' claim that the Medical Defendants caused Tacoma Borden to suffer under unconstitutional conditions of confinement and then evaluates whether or not the plaintiffs properly alleged any specific constitutional violations resulting from each Medical Defendants' acts or omissions.

**2. Conditions of Confinement**

The plaintiffs' statements regarding the conditions-of-confinement claims are generalized and conclusory. *Id.* ¶¶ 96–98, 101, 113, 188–23. The complaint alleges that each defendant was "personally involved in the inhuman and unsanitary conditions of confinement,"*Id* ¶ 19–23. However, the plaintiffs fail to identify a rule or restriction of Fort Bend County that compelled the Medical Defendants to allegedly deny Tacoma Borden access to medically necessary care, or point to an intended condition or practice that led to the constitutionally inadequate provision of medical care. Without an idea of which policies or practices the plaintiffs are challenging and how each defendant

10

was involved in the implementation of the allegedly unconstitutional policies or practices, the court cannot assess whether or not the allegations plausibly meet the *Bell* standard. The plaintiffs therefore fail to state a § 1983 claim against the Medical Defendants under a conditions-of-confinement theory. Instead, the allegations against the Medical Defendants are similar to allegations in cases where the Fifth Circuit has construed the allegations as an episodic-acts-or-omissions claim. *See In re Estate of Henson*, 795 F.3d at 464–65. The court thus now turns to whether the alleged acts or omissions of each Medical Defendant amounted to deliberate indifference towards Tacoma Borden's Fourteenth Amendment right to adequate medical treatment.

### 3. Acts or Omissions – Kloeber

In the second amended complaint, the Bordens conclusorily contend that Kloeber "was personally involved in the denial and delay of the medical care and treatment of Tacoma Thompson Borden." Dkt. 32 ¶ 18. They additionally make the following generalized statements against all Medical Defendants: "Despite her request and warning that she was at imminent risk of having a seizure, the Jail Medical Defendants refused to provide Mrs. Borden with her prescribed Medication." Dkt. 32 ¶ 49; *see also* Dkt. 39 ¶¶ 48, 55, 60. The Bordens do not state what acts or omissions are attributable to Kloeber, and thus fail to allege any facts to support the claim that Kloeber knew that Tacoma Borden was at risk of serious harm as a result of her untreated epilepsy or that Kloeber acted with deliberate indifference by failing to provide Tacoma Borden with her medication. Thus, they do not plausibly allege an episodic-acts-or-omissions claim against Kloeber. The motion to dismiss the § 1983 claim against Kloeber is therefore GRANTED.

### 4. Acts or Omissions – Narinsingh

In the second amended complaint, the Bordens allege that Narinsingh was "personally involved in the . . . denial and delay of medical care of Tacoma Thompson Borden." Dkt 32 ¶ 21.

Like Kloeber, all facts alleged against Narinsingh are generalized statements against all Medical Defendants. Dkt. 32 ¶ 49; *see also* Dkt. 39 ¶¶ 48, 55, 60. The second amended complaint fails to allege any facts to support the claim that Narinsingh knew that Tacoma Borden was at risk of serious harm as a result of her untreated epilepsy or that he or she acted with deliberate indifference by failing to provide Borden with her medication. Without allegations of how Narinsingh personally acted with deliberate indifference to Tacoma Borden's risk of seizure, the plaintiffs fail to make out a plausible episodic-acts-or-omissions claim. The motion to dismiss the § 1983 claim against Narinsingh is therefore GRANTED.

### 5. Acts or Omissions – Rains

In the second amended complaint, the plaintiffs allege that Rains was "personally involved in the . . .denial and delay of the medical care and treatment of Tacoma Thompson-Borden." Dkt. 32 ¶ 20. Specifically, the Bordens allege that "After [Tacoma] Borden's first seizure. . . Rains and Luckstead sent Borden back to her cell and instructed Deputy Bain who upon information and belief does not have any medical training to monitor Mrs. Borden." Dkt. 32 ¶ 54. The first seizure is alleged to have occurred on April 30, 2018. *Id*.¶ 52. The complaint also alleges that Tacoma Borden did not receive medication or a more detailed medical evaluation regarding her risk of seizure until sometime between the evening of May 1 and the afternoon of May 3. Dkt. 32 ¶¶ 57–66.

The facts alleged can lead to a plausible inference that after Rains encountered Tacoma Borden, Rains failed to take steps to immediately medicate Tacoma Borden or immediately escalate the information to an individual who could further assess Tacoma Borden's risk. However, in order to plead deliberate indifference, the plaintiff must allege facts that go beyond mere negligence and indicate either deliberate intent to deprive the plaintiff of medical care or a "wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (5th Cir. 2001) (quoting *Johnson v. Treen*,

12

759 F.2d 1236 (5th Cir. 1985)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The plaintiffs fail to allege that Rains reacted with deliberate indifference to Tacoma Borden's risk of seizure. The facts alleged, if taken as true, would not amount to an actionable act or omission under §1983. The motion to dismiss the § 1983 claim against Rains is therefore GRANTED.

**6. Acts or Omissions – Luckstead**

From the face of the pleadings, it is unclear whether or not the Bordens intended to assert a claims against Luckstead. In the initial and both subsequently amended complaints, Luckstead's name appears in the "Parties" section followed by a general statement that he or she was involved. Dkts. 1, 7, 32. Luckstead's name also appears once in the body of the second amended complaint, where the plaintiffs claim "[a]fter Borden's first seizure Nurse Rains and Luckstead sent Borden back to her cell." Dkt. 32 ¶ 54. However, Luckstead is not listed in the caption, the initial paragraph, or in the final prayer. Dkts. 1, 7, 32. Additionally, the court has no record that Luckstead was served or that service was waived on his or her behalf in relation to this case. Dkts. 2, 3, 38.

In their motion to dismiss, the Medical Defendants argue that the plaintiffs fail to allege facts sufficient to support a claim against Luckstead and that their failure to list Luckstead in the appropriate sections amounts to an abandonment of the claims against Luckstead. Dkt. 33. The plaintiffs failed to respond to the motion to dismiss. Under Local Rule 7.4, failure to respond to a motion is taken as a statement of no opposition. S.D. Tex. R. 7.4. Given the inconsistencies throughout the plaintiffs' pleadings regarding Luckstead's status as a defendant and the plaintiffs' failure to respond to the defendants' argument that the plaintiffs have abandoned their claims against

13

Luckstead, the court must conclude that the plaintiff no longer wishes to pursue a cause of action against Luckstead.

Moreover, even if Luckstead had been properly included in the complaint, the plaintiffs still fail to allege facts against Luckstead to support a claim under § 1983. The factual allegations against Luckstead are identical to those against Rains. The plaintiffs fail to allege that Luckstead acted with deliberate indifference to Tacoma Borden's constitutional rights. The motion to dismiss the § 1983 claim against Luckstead is therefore GRANTED.

**7. Acts or Omissions – Rabius**

The plaintiffs allege that Rabius was "personally involved in the . . . denial and delay of the medical care of Tacoma Thompson Borden." Dkt. 32 ¶ 19. Specifically, the Bordens allege that Rabius failed to adequately treat Tacoma Borden following her third seizure and that she falsified Borden's medical records. *Id*. ¶¶ 65–71. The plaintiffs allege that Tacoma Borden's third seizure occurred at 7:30 pm on Thursday, May 3, 2018, that during her third seizure she sustained injuries to her leg, and that shortly after her third seizure her condition deteriorated enough to require the use of a wheel chair. *Id.* The plaintiffs allege that following the seizure Rabius took Tacoma Borden's blood pressure in her cell, but did not provide any further medical care. *Id.* The plaintiffs also allege that Tacoma Borden's medical records were falsified to reflect that the seizure took place at 1:00 am rather than 7:30 pm, and that Tacoma Borden's blood pressure was falsified, plausibly to justify the extended delay in subsequent medical care. *Id.* The plaintiffs' allegations support the inference that following the third seizure on the evening of May 3rd, of which Rabius was aware, despite serious symptoms of complications, the plaintiff was not offered appropriate medical assistance until she returned from court on May 4. *Id.* ¶¶ 78–81. After Tacoma Borden refused medical care because

of the purported falsifications in her medical records, she allegedly did not receive any additional medical evaluation until May 6. *Id.*

The plaintiffs plausibly allege that Rabius knew that Tacoma Borden was at risk of serious harm as a result of complications following her seizures, and that Rabius responded with deliberate indifference by failing to provide Borden with constitutionally adequate and timely medical treatment. The plaintiffs' plausibly allege a § 1983 claim against Rabius for his or her individual acts and omissions, therefore the motion to dismiss the § 1983 claim against Rabius is DENIED.

### 8. Acts or Omissions – Garza

In the second amended complaint, the plaintiffs restate claims against defendant Garza, claiming that he or she was personally involved in the denial and delay of Tacoma Borden's medical care. The plaintiffs also claim that Garza served in a policymaking and leadership role. Dkt. 33. The court denied a previous motion to invoke qualified immunity and dismiss the § 1983 claims against FBC Defendant Garza. Dkt 28. In the instant motion, the Medical Defendants note that there is some confusion as to the identity of defendant Garza, stating that "Medical Defendant[s'] Counsel is filing a response on behalf of Defendant Garza as both Counsel [Medical Defendants' Counsel and FBC Defendants' Counsel] represent an individual named Garza." Dkt. 33 n.1. Counsel for the Medical Defendants thereby filed a motion to dismiss the § 1983 against Garza to the extent that Garza is a Medical Defendant.

The description of Garza in the second amended complaint describes him or her as "duly appointed to provide medical services at the county jail." Dkt 32 ¶ 23. In the body of the complaint, the plaintiffs state that Tacoma Borden asked for "the supervisor in medical (Garza) and she was told that Garza wasn't there." Dkt 32 ¶ 79. The plaintiffs also identify Garza as a policymaker. Dkt 32 ¶ 123. The references to Garza in the second amended complaint are identical to those in the

initial and subsequently amended complaints. Dkts. 1,7,32. Those references were used as the basis for the denial of the motion to dismiss the § 1983 claims against a defendant named Garza in the motion to dismiss claims against the FBC Defendants. Dkt. 28.

The primary source of confusion appears to be the identity a defendant named Garza included in the initial complaint, against whom service of process was waived by Fort Bend County, and as to whom this court has already denied a motion to dismiss. Nothing in the pleadings indicate that the plaintiffs intended to sue multiple individuals named Garza, but the confusion regarding Garza's identity needs to be resolved. The court therefore ORDERS the parties to meet and confer regarding the identity of Garza.

The plaintiffs shall file a clarification with the court immediately thereafter and advise whether they intended to sue one or two individuals with the surname Garza. The court DEFERS ruling on the motion to dismiss claims against a potential Medical Defendant named Garza until the parties advise if one actually exists.

**E. Punitive Damages Claim**

The Bordens seek punitive damages in their second amended complaint. A jury may assess punitive damages against an individual for a § 1983 claim when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983); *see Stokes v. Delcambre*, 710 F.2d 1120, 1126 (5th Cir. 1983) (finding no error in the lower court's assessment of punitive damages against jailers for their reckless acts and omissions under § 1983).

Here, the plaintiffs have sufficiently asserted a § 1983 claim against Rabius, an individual defendant. Based on the facts alleged, the plaintiffs could plausibly make out a claim for punitive

damages under the *Smith* standard. The Medical Defendants' motion to dismiss the claim for punitive damages is therefore DENIED with respect to Rabius. It is otherwise GRANTED.

### IV. CONCLUSION

The Medical Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to the following:

(1) the Fifth Amendment claims against all of the Medical Defendants;

(2) the ADA claims against all of the Medical Defendants;

(3) the state-law claims against all of the Medical Defendants;

(5) the § 1983 claims against Kloeber, Narinsingh, Rains and Luckstead; and

(4) the punitive damage claims against Kloeber, Narinsingh, Rains and Luckstead.

The court DEFERS ruling on a potential claim against a Medical Defendant with the surname Garza.

The motion to dismiss is otherwise DENIED.

Signed at Houston, Texas on March 17, 2020.

_____
Gray H. Miller
Senior United States District Judge