UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TACOMA BORDEN & ATTALIA BORDEN, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> FORT BEND COUNTY, TEXAS, et al., § <br> § <br> *Defendants*. § | CIVIL ACTION H- 19-551 |

### MEMORANDUM OPINION AND ORDER

Pending before the court are (1) a motion for summary judgment filed by defendant Shirley Rabius (Dkt. 60); and (2) a motion for summary judgment filed by defendant Fort Bend County, Texas and the remaining individual defendants (collectively, the "FBC Defendants") (Dkt. 61).[1] The plaintiffs Tacoma Borden and Attalia Borden did not respond to the motions. After considering the motions, record evidence, and applicable law, the court is of the opinion that both motions should be GRANTED.

### I. BACKGROUND

This lawsuit stems from Tacoma Borden's detention at Fort Bend County Jail (the "Jail"). *See* Dkt. 32 (second amended complaint). Attalia Borden is Tacoma Borden's husband. *Id.* The Bordens assert claims under 42 U.S.C. § 1983 against Rabius and the FBC Defendants, and they

---

[1] Defendants Troy E. Nehls, J. Kovar, D. Youngblood, D. Edwards, T. Garriques, B. Ganey, W. Conger, M. Graham, M. Pedone, F. Bain, K. Guidry-August, S. Holman join Fort Bend County's motion. Dkt. 61. With the exception of defendant Shirley Rabius, the court has already dismissed claims against the other original defendants. *See* Dkts. 28 (retaining the § 1983 claims against the FBC Defendants and the ADA claim against Fort Bend County, but dismissing the other claims against the FBC Defendants and dismissing the § 1983 against T. James); Dkt. 41 (dismissing the § 1983 claims against defendants Kloeber, Narinsingh, Rains, and Luckstead, and dismissing the state-law, Fifth Amendment, and ADA claims against Kloeber, Narinsingh, Rains, Luckstead, and Rabius); Dkt 52 (granting the motion for nonsuit relating to defendant Garza).

assert that Fort Bend County violated the Americans with Disabilities Act ("ADA"). *Id.* The Bordens' other claims have been dismissed. Dkts. 28, 41, 52. The FBC Defendants and Rabius now move for summary judgment on these remaining claims. Dkts. 60, 61. The Bordens did not file a response to either motion.

**A.     Rabius**

At the time of the events giving rise to this lawsuit, Rabius was a nurse at the Jail who was involved in Tacoma Borden's medical care. Dkt. 32. The remaining cause of action against Rabius is a claim under § 1983 relating to Rabius's acts or omissions when treating Tacoma Borden, who has a history of severe seizures for which she takes medication, after Borden allegedly had a third seizure during her confinement at the Jail. *See id.* Rabius contends that the Bordens cannot establish an issue of material fact as to any of the elements of their cause of action against Rabius. Dkt. 60. Specifically, Rabius asserts that the Bordens have no evidence that Rabius was deliberately indifferent to any serious medical need of Tacoma Borden or that Rabius's conduct caused Borden any injury. *Id.*

The second amended complaint indicates that Tacoma Borden did not receive her seizure medication until she had been in the Jail for several days. Dkt. 32 at 18 (stating that Borden "had not received her medication in days" when she was transferred to the Harris County Jail on May 9, 2018). Rabius attaches records to her motion for summary judgment that demonstrate that Tacoma Borden advised she was on Keppra for seizures during intake on April 29 at 5:14 p.m., generic Keppra was ordered for her on May 1 at 7:16 p.m., she received her first does on May 1 at 9:08 p.m., and she received it twice a day thereafter for the remainder of her stay at the Jail. Dkt. 60-1 (Exs. to Rabius's motion for summary judgment). Rabius also provides an expert report from an experienced neurologist indicating that "the medical personnel at the Fort Bend County jail met

the standard of care with regard to the treatment of Ms. Borden's seizure disorder." Dkt. 60-1 at APP 0064–0065 (expert report of Dr. Steven M. Croft). Rabius notes that the Bordens have not designated an expert who could opine that the course of treatment at the Jail was not the appropriate treatment for an inmate who has seizures. Dkt. 60.

The record indicates that Rabius, who was one of several nurses involved in Tacoma Borden's medical care, did not come into contact with Borden until May 4 when Rabius responded to a request to examine Borden for seizure activity. Dkt. 60-1 at APP0029, APP 0060. At that point, according to Jail medical records, Borden had been on her seizure medication at the jail for about three days. *See generally* Dkt. 60-1. Rabius examined Borden, who was "alert and oriented" and "demanding and argumentative" but "did not appear to be [in] any distress." Dkt. 60-1 at APP 0029. Rabius advised other medical staff that Borden was not in distress; other providers were attending to Borden. Dkt. 60-1 at APP060 ("At the time Ms. Borden did not appear to be in any distress which I told the arriving medical staff. I did not task her for an additional evaluation as she was being seen by other practitioners at the time."). Rabius did not encounter Borden again until she administered Borden's seizure medication on the morning of May 6. Dkt. 60-1 at APP0023.

**B.    FBC Defendants**

The FBC Defendants seek summary judgment on the remaining claims asserted against them because Tacoma Borden received medical care within the standard of care, the Bordens have no evidence to defeat the qualified immunity defense asserted by the non-supervisory individual FBC Defendants, they have no evidence to hold defendants Nehls and Kovar liable for the acts and omission of others because they have no evidence of an unconstitutional policy or custom approved by an authorized policymaker that was the moving force behind any constitutional

3

violations, and there is no evidence of intentional discrimination or a failure to accommodate in violation of the ADA. Dkt. 61. The FBC Defendants provide an expert report indicating that Tacoma Borden did not suffer a significant injury as a result of the seizures she had while in the Jail, which they assert negates her claim that she did not receive the medication she needed and repeatedly requested. *Id.* (citing Dkt. 61, Ex. A). They also provide evidence that Borden was provided four pairs of panties and four sanitary pads while she was in the Jail, which they assert negates her claim that the defendants did not provide her with new underwear or sanitary pads after her underwear was soiled with urine following her seizures and blood because she was menstruating. *Id.* (citing Dkt. 61, Ex. B).

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

**A.     Rabius**

The claim that is still pending against Rabius is under § 1983.  The plaintiffs allege that Rabius did not adequately treat Tacoma Borden after her third seizure and falsified her medical records.  Dkt. 32.  The court previously held that the Bordens plausibly alleged that Rabius knew that Tacoma Borden was at risk of serious harm as a result of complications following her seizures, and that Rabius responded with deliberate indifference by failing to provide Borden with constitutionally adequate and timely medical treatment.  Dkt. 41.  Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

In a § 1983 lawsuit brought against an individual defendant in her personal capacity, "'it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right.'"  *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).  "The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015).  "The Fourteenth Amendment requires that state officials not disregard the 'basic human needs of pretrial detainees, including medical care.'"  *Estate of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)); *see also Wichita Cnty.*, 795 F.3d at 462 (quoting this language from *Krajca*).  "[T]he

5

substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee." *Wichita Cnty.*, 795 F.3d at 462 (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861 (1979)).

In the Fifth Circuit, the court's analysis of a § 1983 claim brought by a pretrial detainee depends on whether a plaintiff is alleging an episodic act or omission of an individual state official or the constitutionality of the conditions of confinement. *Wichita Cnty.*, 795 F.3d at 462. "A challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Id.* at 463 (quoting *Hare*, 74 F.3d at 644). "An episodic-acts-or-omissions claim, by contrast, 'faults specific jail officials for their acts or omissions.'" *Id.* (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)). "[T]here is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately." *Id.* at 464.

The claim against Rabius is an episodic-acts-or-omissions claim. A plaintiff asserting an episodic-acts-or-omissions claim points to specific jail officials for their acts or omissions. *Wichita Cnty.*, 795 F.3d at 463. The plaintiff complains first of a certain act or omission and then "'derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.'" *Id.* (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). Intentionality is not presumed for episodic-acts-or-omissions claims, and a jail official violates the pretrial detainee's constitutional rights "when the official had 'subjective knowledge of a substantial risk of serious harm' to the detainee and responded to that risk with deliberate indifference." *Id.* at 464 (quoting *Hare*, 74 F.3d at 650). "In other words, the state official must know of and disregard an excessive risk to inmate health and safety." *Id.* In order to demonstrate deliberate indifference in the context of a medical professional failing to adequately treat a pretrial

detainee the plaintiff must show that the medical professional "refused to treat him [or her], ignored his [or her] complaints, intentionally treated him [or her] incorrectly or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985)).

Here, there is no evidence that Rabius was intentionally indifferent to Tacoma Borden's medical needs. Rather, the record indicates that Tacoma Borden had been regularly receiving her seizure medication by the time Rabius came into contact with Borden, and that Rabius provided care and then left Borden with other medical professionals. There is no evidence in the record demonstrating a wanton disregard of Borden's medical needs by Rabius. Because Tacoma Borden has provided no evidence to support the claim that Rabius disregarded her serious medical needs, Rabius's motion to dismiss the § 1983 claim asserted against her is **GRANTED**.

B.   FBC Defendants

   1.   ADA

The Bordens allege that Fort Bend County violated the ADA because Tacoma Borden was denied reasonable accommodations for her disability (severe seizures) at the Jail or such accommodations were unreasonably delayed, and she was denied adequate medical care. Dkt. 32. Under Title II of the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" includes state or local governments, "any department, agency, special purpose district, or other instrumentality of a State or States or local government," and the National Railroad Passenger Corporation (and any commuter authority). 42 U.S.C. § 12131. A

plaintiff asserting a claim against a public entity under Title II of the ADA must show "(1) that he [or she] has a qualifying disability; (2) that he [or she] is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his [or her] disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Since the Bordens did not respond to the motion for summary judgment and failed to submit any admissible evidence to support these elements, they have not met their burden of showing that there is an issue of material fact as to any of these elements. Accordingly, the FBC Defendants' motion for summary judgment on this claim is **GRANTED**.

2. § 1983

The FBC Defendants move for summary judgment for each individual defendant because the plaintiffs have no evidence of any specific facts to overcome their qualified immunity defense and there is no evidence to establish the violation of a constitutional right by any FBC Defendant. Dkt. 61. Additionally, the FBC Defendants assert that there is no evidence to support essential elements of the Bordens' § 1983 claims against Nehls and Kovar, who the Bordens seek to hold accountable as supervisors, or Fort Bend County. *Id.* They argue that there is no evidence that Nehls or Kovar failed to adopt necessary policies relating to inmates, hiring, or supervision. *Id.* The court will first consider the claims against Fort Bend County and the supervisors (Nehls and Kovar), and it will then turn to the alleged wrongful acts of the individual FBC Defendants.

a. Claims Against Nehls, Kovar, and Fort Bend County

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Municipalities and other local government units qualify as "persons" under § 1983.

*Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 689, 98 S. Ct. 2018 (1978). However, a local government "may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996)

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The reason municipal liability requires proof of a policymaker is because there is no respondeat superior liability under § 1983. Instead, courts must consider whether the official's "decisions may rightly be said to represent the official policy of [the municipality, thus] subjecting it to liability under § 1983." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 736, 109 S. Ct. 2702 (1989). A "policymaker" must have "'final policymaking authority' over the subject matter of the offending policy." *Id.* at 737. "There is no 'de facto' final policymaking authority." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). A "final policymaker" has "final authority to establish municipal policy with respect to the action ordered. . . . [Having] discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482, 106 S. Ct. 1292 (1986).

To meet the "official policy" element, the plaintiff must either allege (1) a written policy or procedure that is officially adopted or promulgated by the policymaking authorities of a governmental agency; or (2) a persistent, widespread practice of governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well settled

9

as to constitute a policy or custom that fairly represents the agency's policy. *Piotrowski*, 237 F.3d at 579. The plaintiff may also demonstrate an unwritten policy if he or she proves that a "final policymaker" took a single unconstitutional action. *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008). The "'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).

To meet the "moving force" element, the plaintiff must show direct causation by establishing "'a direct causal link' between the policy and the violation." *Peterson*, 588 F.3d at 848. It is not enough for the plaintiff to allege that a change in policy may have prevented the violation, the municipality's policy "must be affirmatively linked to the constitutional violation." *Faire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

At the motion to dismiss stage in the instant case, the court specifically noted that the Bordens had not yet been able to gather evidence regarding how other inmates have been treated but that the allegations relating to Fort Bend County's policies and procedures was sufficient, pre-discovery, to survive the motion to dismiss. Dkt. 28. With regard to Nehls and Kovar, the court found that there were sufficient allegations of failure-to-train that led to unconstitutional conditions of confinement. *Id.* Now, however, the Bordens have had an opportunity to conduct discovery and must point to facts rather than plausible allegations. They must establish a genuine issue of material fact supporting the claims in their complaint. They, however, failed to respond to the motion and have thus provided no policies or procedures, have provided no evidence of any other individuals who may have been impacted in the same way as Tacoma Borden, and do not even provide an affidavit from Ms. Borden to support her factual allegations that she did not receive medication for her seizures and was subjected to extreme unsanitary conditions following her

10

seizures. They therefore fail to demonstrate there is an issue of material fact that some policy or widespread practice of Fort Bend County led to a violation of her constitutional rights. The motion for summary judgment on the § 1983 claims asserted against Fort Bend County, Nehls, and Kovar is **GRANTED**.

### b. Claims Against the Individual FBC Defendants

The court allowed the claims against the remaining individual FBC Defendants to proceed beyond the motion-to-dismiss stage because the Bordens plausibly stated a conditions-of-confinement claim against these individuals. *See* Dkt. 28. Courts in the Fifth Circuit apply the test found in *Bell v. Wolfish* "when a pretrial detainee attacks general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 643. The question under *Bell v. Wolfish* is "whether those conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535. The court must therefore determine "whether the [conditions or restrictions were] imposed for the purpose of punishment or whether [they were] but incident to some other legitimate governmental purpose." *Id.* at 538. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. If the condition is instead "arbitrary or purposeless," a court may infer that it is "punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* Thus, the plaintiff does not have to demonstrate that the state actor or municipality acted with intent to punish. *Wichita Cnty.*, 795 F.3d at 463. In determining whether an interest is legitimate, courts must keep in mind that the government's interests include not only its need to ensure the detainee's presence at trial but also its legitimate interests in managing the facility. *Bell*, 441 U.S. at 540. Sometimes challenged conditions are explicit, and sometimes they reflect a *de facto* policy. *Wichita Cnty.*, 795 F.3d at 463.

11

"The Constitution does not mandate comfortable prisons [or jails], but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994) (cleaned up). "[C]onfinement of a pretrial detainee necessarily involves some loss of liberty." *Harris v. Angelina Cnty., Tex.*, 31 F.3d 331, 334 (5th Cir. 1994). "[J]ail conditions which amount to 'cruel and unusual punishment' under the Eighth Amendment," which is the standard applied to prisoners, "surely amount to 'punishment'" of pretrial detainees "under the Fourteenth Amendment." *Id.*

Part of the court's concern relating to the conditions-of-confinement claim during the motion-to-dismiss stage was that the Bordens alleged that officials refused to provide proper hygiene products needed because of incontinence Tacoma Borden suffered during her seizures and because she was menstruating during her time in the Jail. *See* Dkt. 28 ("While the court does not necessarily believe being told to take a shower without being provided clean undergarments and needed sanitary supplies is a constitutional violation, withholding clean undergarments and sanitary supplies for days on end when an inmate is menstruating and suffers from a medical condition causing incontinence is."). In the summary judgment record provided by the remaining defendants, there is an assertion and supporting affidavit that Tacoma Borden "was provided with four pairs of panties and four sanitary pads." Dkt. 61 & Ex. B. The FBC Defendants appear to argue that these conditions were thus not unsanitary and did not constitute "punishment"; they assert that the affidavit about the provision of pads and panties negates an essential element of the Bordens' claim that was predicated on failure to provide these items. Dkt. 61. In the second amended complaint, the Bordens complained that several of the individual FBC Defendants did not provide her with new underwear or sanitary pads even though she had requested hygiene products and clean clothes because hers were soiled. *See* Dkt. 32 ("The individual defendants

12

refused to provide her with new underwear or feminine pads."). The record evidence indicates that Tacoma Borden was at the Jail from at least April 29 through May 9, *see* Dkt. 60-1 (Jail medical records). The court does not find the mere receipt of four sanitary pads and four pairs of underwear during this extended stay during which Borden allegedly was menstruating and had more than one seizure to be stellar evidence of sanitary conditions that "negates an essential element" of the Bordens' claim. Nevertheless, the plaintiffs bear the burden of demonstrating there is an issue of material fact as to the elements of their claims. And the plaintiffs did not respond to the motion for summary judgment and provide the court with affidavits or evidence to support their allegations of unsanitary conditions.

Moreover, the individual FBC Defendants assert qualified immunity. If a defendant raises a qualified immunity defense, the plaintiff bears the burden of demonstrating that "(1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Id.* "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullinex v. Luna*, 136 S. Ct. 305, 308 (2015) (quotations omitted).

Here, while the allegations in the complaint relating to Tacoma Borden's experiences at the Jail are troublesome, as is the suggestion that she only needed four sanitary napkins and four pairs of underwear for a more than ten-day stay when she allegedly had multiple seizures and was on her menstrual cycle, she bears the burden of showing that each defendant's actions were objectively unreasonable in light of clearly established law; she has not provided any actual evidence relating to each individual defendant. The record does not indicate which of the FBC Defendants encountered Tacoma Borden when or her condition at the time they did so. If Borden

has this evidence, she has failed to provide it to the court. Therefore, the motion for summary judgment on the grounds that the individual FBC Defendants are immune is **GRANTED**.

### IV. Conclusion

Rabius's motion for summary judgment is **GRANTED**. The FBC Defendants' motion for summary judgment is **GRANTED**. There are no other remaining claims in this lawsuit. Therefore, the court will enter a final judgment concurrently with this memorandum opinion and order.

Signed at Houston, Texas on March 31, 2021.

_____
Gray H. Miller
Senior United States District Judge